UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
DIYA JAMAL PEARSALL,

                Plaintiff,      MEMORANDUM & ORDER
                                          16-CV-6733(JS)(SIL)

    -against-

MICHAEL J. SPOSATO,
and ARMOR CORRECTIONAL HEALTH, INC.,

                Defendants.
-------------------------------------X

APPEARANCES
For Plaintiff:       Diya Jamal Pearsall, pro se
                     17-A-1202
                     Sing Sing Correctional Facility
                     354 Hunter Street
                     Ossining, New York 10562-5442

For Defendants:
Armor Correctional
Health Inc.          John J. Doody, Esq.
                     Dale Nicholson McLaren, Esq.
                     Lewis, Brisbois, Bisgaard & Smith LLP
                     77 Water Street, 21st Floor
                     New York, New York 10005

Michael J. Sposato  Samantha Goetz, Esq.
                     Liora M. Ben-Sorek, Esq.
                     Nassau County Attorney's Office
                     One West Street
                     Mineola, New York 11501

SEYBERT, District Judge:

        Plaintiff Diya Jamal Pearsall ("Pearsall" or "Plaintiff"), proceeding pro se, filed this lawsuit against Sheriff Michael J. Sposato ("Sposato") and Armor Correctional Health Incorporated ("Armor"), claiming violations of his

constitutional rights pursuant to 42 USC § 1983. (Compl., Docket Entry 1.) Currently pending before the Court is Armor's motion to dismiss the Complaint for failure to state a claim. (Def.'s Mot., Docket Entry 29.) For the following reasons, Armor's motion to dismiss is GRANTED.

BACKGROUND[1]

I. The Medical Condition

In January 2016, Plaintiff was an inmate at Nassau County Correctional Center ("NCCC"), a facility with medical services provided by Armor Correctional Health Inc. (Compl. at 4, 6.)[2] While housed at NCCC, Plaintiff was exposed to artificial lighting in his cell that caused him to suffer epileptic seizures. (Compl. at 4-5.)

Specifically, starting in January of 2016, maintenance workers at the facility began removing manual light switches from inside cells, allowing only Correction Officers control over the

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)). Because Sheriff Sposato has not moved to dismiss, the Court discusses only those facts that relate to Armor.

[2] The Court will use the pagination assigned by the Electronic Case Filing System when referring to the Complaint and its attachments.

lights. (Compl. at 4-5.) As a result, from approximately 6:30 a.m. through 11:30 p.m. artificial lights inside Plaintiff's cell remained on. (Compl. at 5.) To avoid being exposed to the artificial lights, on January 31, 2016, Plaintiff placed articles of clothing over the lights in his cell and he was disciplined as a result. (Compl. at 5.) In the months that followed, the constant exposure to the cell lights caused Plaintiff to have multiple seizures and he received medication for his condition. (Compl. at 5.) However, the medication caused him to feel sick. (Compl. at 6.) As a result of Plaintiff's condition, he suffers headaches, dizziness, blurred vision, as well as minor abrasions to his head and face due to falling during seizures. (Compl. at 4.) As of February 2016, Plaintiff began requesting treatment by a neurologist and protective glasses to diminish the effects of the artificial lighting on his epileptic episodes. (Compl. at 6-7.)

II. Procedural History

Plaintiff commenced this action on November 28, 2016. (See Compl.) Plaintiff contends that Armor was deliberately indifferent to his medical needs in connection with his recurring epilepsy, including ignoring his requests to be seen by a neurologist and not receiving protective glasses to shield him from the artificial lighting. (Compl. at 4-7.) Plaintiff seeks

3

$1.5 million dollars and an order directing Armor to allow him to be seen by an outside specialist. (Compl. at 8.)

On August 14, 2017, Armor moved to dismiss the Complaint. (See Def.'s Mot.) Armor argues that: (1) Plaintiff failed to exhaust his administrative remedies by failing to demonstrate that he provided the requested medical information to verify his condition; (2) Plaintiff fails to allege a plausible Section 1983 claim because he does not allege that Armor was directly participating in a policy to deprive him of his rights; (3) Plaintiff fails to raise a plausible constitutional violation; and (4) Plaintiff's request for injunctive relief should be dismissed as moot as he is no longer housed at the facility. (See Def.'s Br., Docket Entry 29-2, at 9-17.) Plaintiff filed a response in opposition to Armor's motion to dismiss on August 31, 2017; Armor filed a response on September 26, 2017. (See Pl.'s Br.; Def.'s Reply Br., Docket Entry 33.)

## DISCUSSION

As a threshold matter, Armor moves for dismissal of Plaintiff's claim for injunctive relief on the grounds of mootness given that Plaintiff is no longer housed at NCCC. (Def.'s Br. at 17.) "It is settled in [the Second] Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996). Accordingly, Armor's motion to dismiss

4

Plaintiff's claim for injunctive relief is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

I. <u>Legal Standard</u>

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To avoid dismissal, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Claims are deemed plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>. at 679, 129 S. Ct. at 1950.

When a litigant is proceeding <u>pro se</u>, the Court must interpret his submissions "'to raise the strongest arguments that they suggest.'" <u>Kirkland v. Cablevision</u> sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). Thus, a complaint filed by a <u>pro se</u> litigant must be construed liberally. However, this liberal construction does not excuse Plaintiff "'from compl[ying] with relevant rules of procedural and substantive law.'" <u>Traguth v. Zuck</u>, 710 F.2d 90,

95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

II. Failure to Exhaust Administrative Remedies

According to the Prison Litigation Reform Act ("PLRA"): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002). Pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 912, 166 L. Ed. 2d 798 (2007). Dismissal for failure to exhaust is appropriate when "'on the face of the complaint, it is clear that a plaintiff did not exhaust administrative remedies.'" Abreu v. Schriro, No. 14-CV-6418, 2016 WL 3647958, at *8 (S.D.N.Y. July 1, 2016) (quoting

Williams v. Dep't of Corr., No. 11-CV-1515, 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011)).

According to the New York State Department of Correction and Community Supervision, Nassau County Correctional Facility has a three step grievance process, through which inmates present their issues for review. (See Def.'s Br. at 9.) The steps of the grievance process are: "(1) the grievance is investigated and reviewed by the inmate grievance resolution committee ("IGRC"); (2) if appealed, the superintendent of the facility reviews the IGRC's determination; and (3) if the superintendent's decision is appealed, the Central Office Review Committee makes the final administrative determination." (Def.'s Br. at 9 (citations omitted).)

Plaintiff alleges the following facts relevant to exhaustion:

- Plaintiff filed multiple Sick Call Request Forms asking to be seen by a specialist/neurologist and to receive different medication. (See Sick Call Requests, Compl. at 13-19.)
- Plaintiff filed Inmate Grievance Forms on January 31, 2016, March 3, 2016, and March 22, 2016, requesting, in relevant part, treatment by a specialist and issuance of protective glasses. The Nassau County Sheriff's Department, Division of Correction, sent receipts acknowledging possession of the Inmate Grievance Forms. (See Inmate Grievance Forms, Compl. at 24-

- 25; Receipts of Grievance Forms, Compl. at 20-22.)
- On March 7, 2016 Plaintiff received a letter from the Chief Administrative Office, Captain Donahue, informing Plaintiff that "according to the facility Physician your request to see a specialist has been denied, and is beyond the scope of authority of the Chief Administrative Office." (See Donahue Letter, Compl. at 23.)
- On March 28, 2016 the Grievance Coordinator instructed Plaintiff to sign a medical release to obtain information about his condition and history of seizures. (See Inmate Grievance Form, Compl. at 24.)

According to Armor, there is no evidence that Plaintiff complied with the March 28, 2016 directive to provide a medical release to allow the medical staff to corroborate his medical complaints and history. (Def.'s Br. at 9.)

In the Court's view, it is not clear that Plaintiff failed to exhaust his administrative remedies. Plaintiff alleges that he "wrote several grievances, wrote complaints to [the] Sheriff's Office, also wrote [the] Commissioner of Corrections." (Compl. at 2.) Further, Plaintiff attached multiple inmate grievance forms to his Complaint regarding his medical condition, with acknowledgements of receipt from the Corrections Division. (See Inmate Grievance Forms at 24-25.) Thus, the Court finds that the Complaint does not clearly demonstrate a failure to exhaust administrative remedies. See McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) ("[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a

8

Rule 12(b)(6) motion is not the proper vehicle."); Smalls v. Jummonte, No. 08-CV-4367, 2010 WL 3291587, at *2 (S.D.N.Y. Aug. 13, 2010).

III. The Deliberate Indifference to Medical Needs Claim

Section 1983 provides in pertinent part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Rae v. Cty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

In the instant matter, it is unclear whether Plaintiff was a convicted prisoner or a pre-trial detainee while he was incarcerated at NCCC, but Armor contends that Plaintiff's claims arise under the Eighth Amendment. (Def.'s Br. at 5.) However, if Plaintiff was a pre-trial detainee while housed at NCCC, his claims should be construed under the Fourteenth Amendment. See Smith v. Outlaw, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30,

2017) ("Plaintiff was a pretrial detainee of the City during the events giving rise to his claims and his allegations are thus assessed under the Due Process Clause of the Fourteenth Amendment."). Ultimately, whether analyzed under the Eighth Amendment or the Fourteenth Amendment, Plaintiff's claims of deliberate indifference fail. Thus, for purposes of this Memorandum and Order, the Court will consider Plaintiff a pre-trial detainee and consider his claims under the Fourteenth Amendment.

As the Supreme Court stated in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976), prison officials violate the constitutional rights of prisoners when they act with "deliberate indifference to serious medical needs of prisoners." "This is true whether the indifference is manifested by prison doctors . . . or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05, 97 S. Ct. at 291 (footnotes omitted).

To establish a claim for deliberate indifference to a medical condition, a two-part test must be satisfied. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). The first portion is an objective determination, requiring the Court to assess the seriousness of the deprivation of medical care, including whether "the medical

care was inadequate, and if so, . . . how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Smith, 2017 WL 4417699, at *2 (internal quotations marks and citation omitted). Further, while courts should tailor the analysis "to the specific circumstances of each case[,] . . . . the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Id. (internal quotation marks and citation omitted). The condition must be "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Grimmett v. Corizon Med. Assocs. of N.Y., No. 15-CV-7351, 2017 WL 2274485, at *3 (S.D.N.Y. May 24, 2017) (quoting Chance, 143 F.3d at 702). If the plaintiff alleges that medical care was delayed or interrupted, the appropriate inquiry is whether "the challenged <u>delay</u> or <u>interruption</u> in treatment . . . is, in objective terms, sufficiently serious," to support a claim. Id. (internal quotation marks and citation omitted; emphasis in original).

Following the Second Circuit's decision in Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017), the Second Circuit drew a distinction between claims of deliberate indifference by convicted prisoners, in which case the claim arises under the Eighth Amendment, and claims of deliberate indifference by pre-trial detainees, in which case the claim arises under the Fourteenth Amendment. Darnell, 849 F.3d at 32-36. The Second Circuit

explained that the second element of deliberate indifference claims by pre-trial detainees "is defined objectively" and a pre-trial detainee is not required to show subjective awareness by the defendant that "[his] acts (or omissions) have subjected the pre-trial detainee to a substantial risk of harm." Id. at 35. Notwithstanding the lower standard articulated in Darnell, "any § 1983 claim or a violation of due process requires proof of mens rea greater than mere negligence." Smith, 2017 WL 4417699, at *3 (quoting Darnell, 849 F.3d at 36).

Overall, "[i]t is well-established that mere disagreement over [ ] proper treatment does not create a constitutional claim." Chance, 143 F.3d at 703. Additionally, "a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." Joyner v. Greiner, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002). "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." Id. at 504-05. Assuming Plaintiff's seizures constitute a sufficiently serious medical condition, he has not shown that Armor's failure to provide a particular type of treatment or medication rises to the level of deliberate indifference. See Reyes v. Gardener, 93 F. App'x 283, 285 (2d Cir. 2004) ("[Plaintiff] has offered no evidence . . . showing that the prescribed medication regimen

12

deviated from reasonable medical practice for the treatment of his condition."); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."); Hamm v. Hatcher, No. 05-CV-503, 2009 WL 1322357, at *8 (S.D.N.Y. May 5, 2009). Additionally, Plaintiff concedes that his medical condition was not ignored by alleging that he was prescribed medications to treat his seizures. (Compl. at 6.) While Plaintiff contends that his condition requires outside treatment by a specialist and expresses a desire for different medication, (Compl. at 7.), "there is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards," McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988). A "'prisoner's right is to medical care--not the type or scope of medical care which he personally desires.'" United States ex. rel. Hyde v. McGinnis, 429 F.2d 864, 867 (2d Cir. 1970) (quoting Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968).

IV. Municipal Liability

Armor is "a private company contracted to perform medical services for inmates at the Nassau County Correctional Center." See Gaines v. Armor Health Care, Inc., No. 12-CV-4666, 2012 WL 5438931, at *3 (E.D.N.Y. Nov. 2, 2012). It is well settled

that "[a]nyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." Filarsky v. Delia, 566 U.S. 377, 383, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012) (internal quotation marks and citation omitted).[3] To adequately state a claim against Armor, Plaintiff must show "'(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right.'" Piccone v. Town of Webster, 511 F. App'x 63, 64-65 (quoting Torraco v. Port Auth. of N.Y. and N.J., 615 F.3d 129, 140 (2d Cir. 2010)). To adequately allege a policy or custom, a plaintiff must allege:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to rights of those who come into contact with the municipal employees.

Donohue v. Manetti, 15-CV-)636, 2016 WL 740439, at *5 (E.D.N.Y. Feb. 24, 2016) (quoting Brandon v. City of N.Y., 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). Generally, "a custom or policy cannot be shown by pointing to a single instance of

---

[3] Armor does not contest that it is a state actor for purposes of Section 1983.

14

unconstitutional conduct by a mere employee of the [municipality]." Id. (quoting Newton v. City of N.Y., 566 F. Supp. 2d 256, 271 (S.D.N.Y. July 16, 2008) (alteration in original)). Further, Plaintiff "must [ ] provide some facts capable of support the existence of such a policy or custom." Smith, 2017 WL 4417699 at *6. Accordingly, "conclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." Donohue, 2016 WL 740439, at *6.

Here, assuming Plaintiff had adequately alleged a constitutional violation, he has failed to allege that the constitutional violation was the result of an unconstitutional policy, practice, or custom. The Complaint does not contain facts that suggest (1) the existence of a policy, custom, or practice, (2) any actions taken by a government official which resulted in inadequate medical care, or (3) a failure to provide training or supervision by Armor. Accordingly, the Complaint is DISMISSED for failure to state a claim against Armor.

V. Leave to Amend

The Second Circuit has held that "pro se complaints should not be dismissed by the district court 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Harnage v. Torres, 665 F. App'x 82, 84 (2d Cir. 2016)

15

(quoting Shomo v. City of N.Y., 579 F.3d 176, 183 (2d Cir. 2009)). In light of Plaintiff's pro se status, the Court grants Plaintiff leave to file an Amended Complaint to allege any viable claims he may have in accordance with this Memorandum and Order. Plaintiff is cautioned that an Amended Complaint **completely replaces** the original Complaint. Thus, all claims and allegations Plaintiff wishes to pursue against both Armor and Sheriff Michael J. Sposato must be included in the Amended Complaint. Additionally, the Court notes that should Plaintiff seek to file an Amended Complaint, he must allege Sposato's personal involvement in the purported constitutional violations. See Patterson v. Cty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.")

CONCLUSION

For the foregoing reasons, Armor's motion to dismiss (Docket Entry 29) is GRANTED. However, the Court GRANTS Plaintiff leave to file an Amended Complaint consistent with this Memorandum and Order. Any Amended Complaint shall be filed within thirty (30) days from the date of this Memorandum and Order, shall be titled Amended Complaint, and shall bear the same docket number as this Order, No. 16-CV-6733(JS)(SIL). The Clerk of the Court is

16

respectfully directed to mail a copy of this Order to the pro se litigant.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  March   31  , 2018
        Central Islip, New York