UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
DIYA JAMAL PEARSALL,

                Plaintiff,                    MEMORANDUM & ORDER
                                              16-CV-6733 (JS)(SIL)
        -against-

MICHAEL J. SPOSATO, and ARMOR
CORRECTIONAL HEALTH, INC.,

                Defendants.
---------------------------------X
APPEARANCES
For Plaintiff:      Diya Jamal Pearsall, pro se
                    17A1202
                    Five Points Correctional Facility
                    State Route 96
                    P.O. Box 119
                    Romulus, New York  14541

For Defendant:      Howard Richard Snyder, Esq.
                    Anne Marie Esposito, Esq.
                    Conway, Farrell, Curtin & Kelly, P.C.
                    48 Wall Street, 20th Floor
                    New York, New York  10005

SEYBERT, District Judge:

        Plaintiff Diya Jamal Pearsall ("Plaintiff"), proceeding

pro se, filed this lawsuit against Sheriff Michael J. Sposato

("Sposato") and Armor Correctional Health Incorporated ("Armor"),

claiming violations of his constitutional rights pursuant to 42

U.S.C. § 1983.   (See generally, Compl., ECF No. 1.)   Presently

pending before the Court is Sposato's Motion for Judgment on the

Pleadings (the "Motion") filed pursuant to Federal Rule of Civil

Procedure ("Rule") 12(c).   (See generally, Motion, ECF No. 109.)

For the reasons that follow, Sposato's Motion is GRANTED.

BACKGROUND[1]

The Court presumes the parties' familiarity with the relevant factual and procedural background of this case, which is summarized in the Court's March 31, 2018, Memorandum & Order granting Armor's Motion to Dismiss (the "Armor's Dismissal Motion"). See Pearsall v. Sposato, No. 16-CV-6733, 2018 WL 1611385 (E.D.N.Y. Mar. 31, 2018) (hereafter, the "2018 M&O").[2] Nevertheless, for the convenience of the reader, the Court reiterates the following.

On or about January 25, 2016, while being housed at the Nassau County Correctional Center ("NCCC"), Plaintiff began to suffer "a recurrence of epileptic seizures due to constant exposure to artificial lighting in [his] cell." (Compl. at 7.)[3] During the relevant time, Plaintiff alleges NCCC was "under the direct supervision of . . . Sposato." (Id.) He specifically alleges that in January 2016, "at the direction of . . . Sposato[,]" maintenance workers at NCCC began "removing manual light switches" from all of the cells located in Plaintiff's dorm. (Id.) Control

---

[1] The following facts are drawn from Plaintiff's Complaint and are assumed true for purposed of Sposato's Motion. All reasonable inferences are drawn in favor of Plaintiff.

[2] The Court's Memorandum & Order is also available on the case docket at ECF No. 41. Going forward, the Court will refer to this case by its Westlaw citation.

[3] For ease of reference, citations to Plaintiff's Complaint are to the ECF PDF page numbers.

of the cell lighting was given to NCCC's Correctional Officers. (Id. at 8.)  Thereafter, Plaintiff contends the unwritten policy at NCCC was that cell lights were turned on sometime between 6:30 a.m. and 7:00 a.m. until lights-out at approximately 11:30 p.m. (Id.)  Plaintiff avers that because of the "constant artificial lighting" he began to suffer seizures which required medication. (Id.)

On January 31, 2016, "in [an] effort to prevent a repeat seizure," Plaintiff covered the lighting fixture in his cell with articles of clothing.  (Id.)  As a result, Plaintiff was given a misbehavior report by a corporal working in Plaintiff's dorm. (Id.)  On a separate occasion, Plaintiff explained his situation to another officer, Sergent McMillian, and, after having his condition verified with the Medical Unit, Plaintiff contends he was scheduled to be relocated to "D2D Medical Unit."  (Id.) However, while enroute to the medical unit, Plaintiff's move was cancelled without reason, and he was relocated to a dorm that still had light switches in the cells.  (Id.)  Eventually however, "all cell light switches were removed" causing Plaintiff to be subjected to "constant artificial light" requiring the intake of seizure medication three times per day.  (Id.)  Plaintiff avers that had he been housed in the D2D Medical Unit, where inmates have control and access to light switches, his condition would have improved greatly.  (Id. at 8-9.)

3

On or about February 4, 2016, Plaintiff began filing sick call requests with Armor "requesting to be seen by a neurologist and asking to be issued protective glasses" for his condition.  (Id. at 9.)  Plaintiff explains that his seizure medication "had been making [him] sick." (Id.)  Plaintiff asserts that despite submitting numerous requests to be seen by a neurologist and for protective glasses his requests were denied. (Id. at 9-10.)

As a result of the seizures, Plaintiff suffers "blinding headaches, dizziness[,] and blurred vision."  (Id. at 7.) Additionally, Plaintiff has "suffered minor abrasion[s] to the head and face from falls" and lives in fear that "at any moment" he may have a seizure.  (Id.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 28, 2016, pursuant to 28 U.S.C. § 1983,[4] alleging constitutional rights violations, and seeking: (1) $1.5 million in damages; and (2) injunctive relief allowing him to be seen by an outside specialist. (Id. at 11.)  On April 21, 2017, Sposato answered the Complaint. (See Answer, ECF No. 13.)  Subsequently, Sposato filed a request for a pre-motion conference (a "PMC Request") seeking

---

[4] Plaintiff's Complaint was filed on the Court's form complaint for Section 1983 actions.

4

leave to file a motion to dismiss the Complaint pursuant to Rule 12(b)(6). (See Sposato PMC Request, ECF No 26.) The Court denied Sposato's PMC Request, observing that he had already answered the Complaint and, as such, a Rule 12(b)(6) motion would be untimely. (See Aug. 11, 2017 Elec. Order.)

On August 14, 2017, Armor filed its Dismissal Motion. (See Armor's Dismissal Motion, ECF No. 29.) Plaintiff opposed Armor's Dismissal Motion. (See Opp'n, ECF No. 32.) Nevertheless, the Motion was granted. See 2018 M&O, 2018 WL 1611385, at *6. Specifically, the Court found: (1) Plaintiff's claim for injunctive relief was mooted after he was transferred from NCCC to a new facility; (2) Plaintiff had not shown "Armor's failure to provide a particular type of treatment or medication" rose "to the level of deliberate indifference"; and (3) "assuming Plaintiff had adequately alleged a constitutional violation," Plaintiff, nevertheless, "failed to allege that the constitutional violation was the result of an unconstitutional policy, practice, or custom" because "[t]he Complaint d[id] not contain facts that suggested" (i) "the existence of a policy, custom, or practice," (ii) "any actions taken by a government official which resulted in inadequate medical care," or (iii) "a failure to provide training or supervision by Armor." Id. at *5. After granting Armor's Dismissal Motion, the Court granted Plaintiff leave to file an amended complaint and cautioned Plaintiff that "should Plaintiff

5

seek to file an Amended Complaint, he must allege Sposato's personal involvement in the purported constitutional violations." Id. at *6 (emphasis added). To date, Plaintiff has not filed an amended complaint and the time to do so has long since expired. (See Case Docket, in toto.)

On December 23, 2022, Sposato filed a second PMC Request seeking leave to file the instant Motion. (See Sposato PMC Request, ECF No. 97.) Plaintiff opposed Sposato's PMC Request. (See PMC Opp'n, ECF No. 104.) The Court granted in part and denied in part Sposato's PMC request, waiving its pre-motion conference requirement, and setting a briefing schedule on the instant Motion. (See Jan. 20, 2023 Elec. Order.) Sposato's Motion was filed on February 17, 2023. Plaintiff failed to file an opposition to Sposato's Motion within the allotted time. (See Case Docket, in toto.) Consequently, on April 28, 2023, Sposato filed a motion requesting the Court consider the instant Motion fully briefed. (See Motion to Expedite, ECF No. 118.) The Court granted Sposato's Motion to the extent it afforded Plaintiff an additional thirty days in which to file an opposition. (See Apr. 28, 2023 Elec. Order.) On May 8, 2023, Plaintiff filed a letter in which he claimed to have previously filed opposition to Sposato's Motion. (Plaintiff's Letter, ECF No. 123.) Consequently, the Court issued an order stating:

> It appears Plaintiff believes that his opposition to Defendant's PMC Request is his opposition to Defendant's Dismissal Motion. Out of an abundance of caution, and considering Plaintiff's pro se status, the Court will extend the time for Plaintiff to file a separate stand-alone document as his opposition to Defendant's Dismissal Motion to June 24, 2023. Otherwise, the Court shall construe Plaintiff's opposition to Defendants PMC Request as his opposition to Defendant's Dismissal Motion.

(May 10, 2023 Elec. Order.)  Ultimately. Plaintiff did not file a separate standalone opposition; as such, for purposes of this Motion, the Court construes Plaintiff's opposition to Sposato's PMC Request as his opposition to the instant Motion.

In his Motion, Sposato makes three arguments.  First, Sposato contends Plaintiff should be precluded from relitigating any of the Court's prior findings made when it granted Armor's Dismissal Motion, to wit: (1) that the Complaint does not allege a custom, policy or practice of a constitutional violation; (2) the Complaint does not state a claim for inadequate medical care; and (3) Plaintiff's claim for injunctive relief was mooted by his transfer from NCCC.  (See Support Memo, ECF No. 109-4 at 4, attached to Motion.)  Second, Sposato argues that, regardless of preclusion, Plaintiff's Section 1983 claim must be dismissed for failure to exhaust administrative remedies because Plaintiff did not file any grievances about the cell lighting.  (Id. at 5.) Finally, Sposato argues that Plaintiff's Complaint fails to allege

7

facts demonstrating that Sposato was personally involved or deliberately indifferent to the alleged constitutional violations. (Id. at 6-8.)

DISCUSSION

I.  Legal Standards

A. Motions Pursuant to Rule 12(c)

Rule 12(c) provides, "[a]fter the pleadings are closed--early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021) (citing Lynch v. City of N.Y., 952 F.3d 67, 75 (2d Cir. 2020)).

When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows

8

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558.  Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

Where "[a] plaintiff proceeds pro se . . . a court is obliged to construe his pleadings liberally." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).  As such, the Court must interpret a pro se Plaintiff's pleadings "to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F. 3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

B. Claims Brought Pursuant to Section 1983

In pertinent part, Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

9

42 U.S.C. 1983. "To state a claim under Section 1983, a plaintiff must 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Pena v. Suffolk County Police Dep't, 21-CV-2496, 2021 WL 3848299, at *2 (E.D.N.Y. Aug. 27, 2021) (quoting Rodriguez v. Shoprite Supermarket, No. 19-CV-6565, 2020 WL 1875291, at *2 (E.D.N.Y. Apr. 15, 2020)).

"Personal involvement is a prerequisite to the assessment of damages in a Section 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim." Marhone v. Cassel, No. 16-CV-4733, 2022 WL 4468056, at *4 (S.D.N.Y. Sept. 26, 2022) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); see also Randle v. Alexander, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) ("It is axiomatic that individual defendants cannot be liable for § 1983 violations unless they are personally involved with the alleged conduct.") "To establish a violation of § 1983 by a supervisor, as with everyone else, . . . the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Porro v. Barnes, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (Gorsuch J.)); see also Graesser v. Lovallo, No. 22-CV-0320, 2022 WL 1443914, at *4 (W.D.N.Y. May 6, 2022)

10

("Personal involvement is required for liability under section 1983"); Shomo v. State of N.Y. Dept. of Corr. and Comm. Supervision, et al., No. 21-CV-0128, 2022 WL 1406726, at *7 (S.D.N.Y. May 4, 2022) ("Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint 'fatally defective on its face.'" (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987))).

"The Second Circuit has held that 'personal involvement' under § 1983 means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" Busch v. County of Erie, 2022 WL 1460022, at *4 (W.D.N.Y. May 9, 2022) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). A supervisory official may be personally involved "if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong." Quick v. Graham, No. 12-CV-1717, 2014 WL 4627108, at *6 (N.D.N.Y. Sept. 11, 2014). Additionally, personal involvement may exist "if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue." Id. (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). "Finally, a supervisory official may be personally involved if he or she [was] grossly negligent in

11

managing subordinates who caused the unlawful condition or event."

Id.

II.  Analysis

      As a threshold matter, the Court previously determined that during the period constituting his incarceration at NCCC, Plaintiff was a pre-trial detainee, and so, his Section 1983 deliberate indifference to medical needs claims were to be considered under the Fourteenth, and not the Eighth, Amendment. See 2018 M&O, 2018 WL 1611385, at *4.

     A. Deliberate Indifference to Medical Needs

      A Fourteenth Amendment claim for deliberate indifference to medical needs requires a showing "(1) that Plaintiff[] had a serious medical need . . . , and (2) that the Defendant[] acted with deliberate indifference to such needs."  Charles v. Orange County, 925 F.3d 73, 86 (2d Cir. 2019) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976); and Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)).  A medical need is "sufficiently serious" where it "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  Charles, 925 F.3d at 86 (citing Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).  To establish deliberate indifference, Plaintiff "can allege either that the defendant[] knew [or should have known] that failing to provide the complained medical treatment would pose a substantial risk to his health."  Id. at 87.

12

Here, Plaintiff's Complaint fails to allege precisely how the cell lighting policy was unconstitutional or how Sposato was deliberately indifferent to Plaintiff's medical needs. Indeed, the sole mention of Sposato in the Complaint is that, "within the month of January 2016[,] at the direction of [Sherriff] Michael J. Sposato[,] maintenance [workers] began removing manual light switches from all cells in" Plaintiff's dorm.[5]  Accepting arguendo that Plaintiff's condition was sufficiently serious, the Court previously determined that, regardless, Plaintiff could not show deliberate indifference to his medical needs because he conceded his medical needs were being treated with medication. See 2018 M&O, 2018 WL 1611385, at *5.  Moreover, the Court found that a mere "difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." Id. (quoting Joyner v. Greiner, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002)).  For the reasons previously articulated in the Court's 2018 M&O dismissing Plaintiff's claims against Armor, the Court likewise finds that the Complaint is devoid of any facts that plausibly allege Sposato was deliberately indifferent to Plaintiff's medical needs when

---

[5] From the dearth in factual allegations specific to Sposato, the Court finds Plaintiff's conclusory allegation regarding the lighting policy was to serve only as background information regarding Plaintiff's now-dismissed claims against Armor.

instituting the lighting policy, which in any event has not been plausibly alleged to be an unconstitutional policy.[6]

B. Conditions-of-Confinement

To the extent the Complaint can be read to assert that Sposato was deliberately indifferent to Plaintiff's conditions-of-confinement, Plaintiff's Complaint neither establishes Sposato's personal involvement in the alleged constitutional violation nor does it plead facts sufficiently establishing Sposato acted with deliberate indifference to Plaintiff's conditions-of-confinement.

To state a Fourteenth Amendment conditions of confinement claim:

> a plaintiff must satisfy both an objective prong and a subjective prong. The objective prong requires 'showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process,' while the subjective prong requires 'showing that [the defendant] acted with at least deliberate indifference to the challenged conditions.

Allen v. Stringer, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (quoting Darnell, 849 F.3d at 29). "[T]o establish a claim for deliberate indifference to conditions of confinement . . . the pretrial detainee must prove that the

---

[6] Indeed, as discussed infra Part II.B.1, the Complaint does not plead facts sufficient to allege that Sposato was even aware of Plaintiff's medical issues, let alone how the lighting policy affected Plaintiff's conditions-of-confinement.

defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." <u>Darnell</u>, 849 F.3d at 35.

1. <u>Plaintiff's Complaint Does Not Plausibly Allege Sposato's Personal Involvement in the Alleged Constitutional Violation</u>

As previously articulated, a prerequisite to bringing a Section 1983 claim is the establishment of the Defendant's personal involvement.  Here, Plaintiff's Complaint is devoid of factual allegations showing Sposato was personally involved in the alleged constitutional violation, other than the conclusory statement that Sposato directed maintenance crews replace the manual light switches in Plaintiff's cell.  Indeed, Plaintiff does not plausibly plead facts alleging Sposato was aware of Plaintiff's complaints other than the vague claim that Plaintiff made "several complaints to [the] [Sherriff's] office" and "wrote complaints."  (Compl. at 2.)  To the extent Plaintiff relies upon the grievances annexed to his Complaint to establish Sposato's awareness of Plaintiff's complaints, the Court finds the annexed grievances do not grieve the cell lighting conditions but instead grieve his medical care and desire to be seen by a neurologist/specialist.[7]  (See <u>id.</u> at 12-15, 23-28.)

---

[7] For the same reasons articulated by the Court in its prior 2018 M&O, the Court finds here that it is unclear whether Plaintiff

15

Nevertheless, accepting as true Plaintiff's conclusory assertion that he wrote complaints to the Sherriff's office, "merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim." Candelaria v. Higley, No. 04-CV-0277, 2008 WL 478408, at *2 (W.D.N.Y. Feb 19, 2008) (collecting cases); see also Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter" (citing Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997))); Charles v. N.Y. State Dep't. of Corr. Serv's., No. 07-CV-1274, 2009 WL 890548, at *6 (N.D.N.Y. Mar. 31, 2009) ("Basically, the cases make clear that the determination of personal involvement based on a letter of complaint to a supervisor . . . depends upon the contents of the letter and whether the supervisor referred the letter to a subordinate officer or whether the supervisory official investigated and decided the issue him or herself.")

---

exhausted his administrative remedies with regard the cell lighting issue.  See 2018 M&O, 2018 WL 1611385, at *3. Nevertheless, even if the Court assumes arguendo that Plaintiff did exhaust his administrative remedies, the Complaint is fatally defective in that it neither alleges Sposato's personal involvement in the alleged constitutional violation nor does it allege facts sufficient to establish deliberate indifference.

Plaintiff further alleges that he had two interactions with staff at NCCC in which he made grievances: first, with a Corporal who gave Plaintiff a misbehavior report for attempting to cover up his lighting fixture; and second, with Sergeant McMillan to whom Plaintiff explained the situation. (Compl. at 8.) Plaintiff alleges no facts suggesting that the Corporal or McMillan relayed Plaintiff's complaints to Sposato, or that they informed Plaintiff that they would do so; nevertheless, even if they had done so, the Complaint contains no facts that Sposato acted upon that information. See McNair v. Kirby Forensic Psychiatric Ctr., 09-CV-6660, 2010 WL 4446772, at *13 (S.D.N.Y. Nov. 5, 2010) ("[M]ere notification of alleged wrongdoing does not establish personal involvement under Section 1983."). Similarly, to the extent Plaintiff argues Sposato was personally involved based solely upon his supervisory capacity, such allegations are insufficient to establish personal involvement. See Marhone, 2022 WL 4468056, at *4.

2. Plaintiff's Complaint Does Not Allege Facts Sufficient to Allege Sposato Acted with Deliberate Indifference to Plaintiff's Conditions of Confinement

"[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety." Morgan v. Dzurenda, 956 F.3d 84, 89 (2d Cir. 2020) (quoting Hathaway v. Coughlin, 37

17

F.3d 63, 66 (2d Cir. 1994)).  Indeed, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

As discussed above, Plaintiff does not sufficiently plead facts alleging Sposato was on notice that the lighting policy, and the alleged constant exposure to artificial lighting, of which Plaintiff complains, posed a substantial risk of harm to Plaintiff.  (See supra Part II.B.1.)  Moreover, Plaintiff's Complaint fails to allege Sposato was responsible for instituting the unwritten policy that lights should be turned on from 6:30/7:30 a.m. to 11:30 p.m.[8]  Additionally, while Plaintiff alleges cell lighting was controlled from the Officer's Control Area, there are no factual allegations in the Complaint that Sposato had any control over the cell lighting or that he directed officers in the

---

[8] While courts have found constant exposure to artificial lighting may, under certain circumstances, create conditions-of-confinement which violate the constitution, they have done so in circumstances different from the case at bar.  Compare Holmes v. Grant, No. 03-CV-3426, 2006 WL 851753, at *3, 11-12 (S.D.N.Y. Mar. 31, 2006) (finding plaintiff's claim of 24-hour illumination of the SHU during plaintiff's 35-day confinement caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems potentially violated the Eighth Amendment) (collecting cases).  Here, there are no allegations that the wattage of the lighting was excessively high such that Plaintiff was deprived of sleep.  In fact, Plaintiff's allegation he was exposed to constant lighting from 6:30/7:30 a.m. to 11:30 p.m., tacitly implies that from 11:30 p.m. to 6:30/7:30 a.m. the cell lighting was turned off -- or dimmed to an acceptable level -- such that Plaintiff was not exposed to "constant" artificial lighting.

18

control area to keep the lights turned on from 6:30/7:30 a.m. to 11:30 p.m.. (See Compl. at 8.) In sum, other than the conclusory allegation that maintenance removed light switches from the prison cells at Sposato's direction, there are no factual allegations in the Complaint that Sposato had anything to do with the cell lighting situation at NCCC whatsoever. This sole, bald allegation is insufficient to maintain a claim of deliberate indifference.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED that** Sposato's Motion for Judgment on the Pleadings (ECF No. 109) is GRANTED. Judgment is to enter accordingly and, thereafter, the Clerk of the Court is directed to close this case.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

19

**IT IS FURTHER ORDERED** that the clerk of the Court shall mail a copy of this Memorandum & Order to the pro se Plaintiff and include the notation "Legal Mail" on the envelope.

                                        SO ORDERED.


                                        /s/ JOANNA SEYBERT
                                        Joanna Seybert, U.S.D.J.

Dated: September 13, 2023
       Central Islip, New York